UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ROBERT KREHNBRINK, ET AL., PLAINTIFFS | CASE NO. 1:08CV541 (DLOTT, J.) (HOGAN, M.J.) |
| VS. | |
| UPCOUNTRY PRODUCTS, LTD, ET AL., DEFENDANTS | |

## REPORT AND RECOMMENDATION

Plaintiffs, Robert Krehnbrink and Robert Klaus, are proceeding pro se. Plaintiffs have filed a six-count Complaint against Defendants, UpCountry Products, LTD, Ken and Pam Paley, SmartChoice Products, Inc., The Ballard Goup and Malcolm Ballard. Before the Court are Defendants' Motion to Dismiss for Failure to State a Claim (Doc. 8), Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 9), Plaintiff's Motion to Convert Motion to Dismiss for Failure to State a Claim into Motion for Summary Judgment (Doc. 14), Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 15), Defendants' Reply in Support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 19), Defendants' Reply in Support of its Motion to Dismiss for Failure to State a Claim and Memorandum in Opposition to Plaintiffs' Motion to Convert to Motion for Summary Judgment (Doc. 20) and Plaintiffs' Reply in Support of its Motion to Convert Defendants' Motion t o Dismiss for Failure to State a Claim into Motion for Summary Judgment (Doc. 21). The Complaint lists various causes of action, to wit: breach of contract, conversion, unfair competition, unjust enrichment and a violation of the Ohio State Uniform Trade Secrets Act.

## BACKGROUND INFORMATION

A previous lawsuit brought by both Plaintiffs, co-owners of Skin Barrier Technologies LLC, against UpCountry Products, LTD and the Paleys in the Southern District of Ohio (Case

No. 1:04CV00489) was resolved by a Settlement Agreement. In that case, Plaintiffs claimed that UpCountry Products and the Paleys marketed and sold a skin lotion designed to prevent a person from contracting poison ivy and similar irritants. The Settlement Agreement precluded Defendants from selling the skin barrier cream and from using certain words to promote the product. After the execution of the Settlement Agreement, Plaintiffs allege that UpCountry Products and the Paleys sold their business to SmartChoice Products, The Ballard Group and Malcolm Ballard, all of which are alleged to be "assigns," bound by the Settlement Agreement. Plaintiffs then allege that all Defendants violated their rights as set forth in the Complaint.

## DEFENDANTS' MOTION TO DISMISS (DOCS. 8 & 9)

Defendants have attached to their Motion (Doc. 8), a copy of the Asset Purchase Agreement, executed on November 18, 2006 by Ken Paley as President of UpCountry Products and Malcolm Ballard, as President of Smart Choice Products. Among the assets purchased by Smart Choice are the trademarks for "Yardglove" and "Ivystop," the Barrier Cream formula associated with the trademarks and various files, software and records of UpCountry Products. Defendants argue that The Ballard Group is not a party to the Agreement and that Malcolm Ballard obviously executed the Agreement on behalf of Smart Choice Products and not in an individual capacity. Defendants also argue that Smart Choice Products is an asset purchaser and neither a successor nor a assign of UpCountry.

It is obvious that former Defendants Krehnbrink and Claus, and former Plaintiffs UpCountry Products and the Paleys, were the only parties to the Settlement Agreement and that neither the Ballard Group nor Malcolm Ballard were parties to the Asset Purchase Agreement. Therefore, Smart Choice Products, as a nonparty, could not breach the Settlement Agreement. Moreover, neither The Ballard Group, nor Malcolm Ballard, as nonparties, could breach the Asset Purchase Agreement.

Defendants' Motion to Dismiss is well taken as to Defendants Smart Choice Products, The Ballard Group and Malcolm Ballard with reference to Count One of Plaintiffs' Complaint, which alleges breach of contract in relation to the Settlement Agreement. One simply cannot

breach a contract to which one is not a party. SmartChoice Products is merely an asset purchaser, not a successor, nor an assign, of UpCountry Products.

Plaintiffs' Third Count is for conversion, a cause of action directed to the activities of Defendants Ken Paley and UpCountry in using the barrier cream referred to as "Yardglove" for purposes beyond a test market run. Defendants' Motion to Dismiss should be granted as to Defendants Smart Choice Products, The Ballard Group and Malcolm Ballard in relation to this Count.

The Fourth, Fifth and Sixth Counts of Plaintiffs' Complaint allege a violation of Ohio's Uniform Trade Secrets Act and state claims for unfair competition and unjust enrichment. All of these claims appear to relate to the Settlement Agreement, a conclusion to which Plaintiffs agree: "[t]he Complaint is based on the Settlement Agreement between Plaintiff(s) and UpCountry." (*See* Plaintiffs' Reply Memorandum, (Doc. 21, at 4). Since neither Smart Choice, The Ballard Group nor Malcolm Ballard were parties to the Settlement Agreement, these claims should be dismissed.

The Seventh Claim is for breach of contract. Although the Plaintiffs refer to Defendants' actions as constituting a "material breach of the Settlement contract," we cannot be sure that the behavior complained about is, or is not, different from the allegations in the original Complaint, which were resolved by the Settlement Agreement. But in any event, neither Smart Choice Products, The Butler Group nor Malcolm Butler are parties to the Settlement Contract and could not breach it, Count Seven of the Complaint must be dismissed as to the three moving Defendants.

The moving Defendants' second Motion to Dismiss (Doc.9) attacks a jurisdictional problem, namely that because all parties are residents of Ohio, there is no diversity, and since no allegation is made regarding the amount of damages sought, the Court cannot assume that the jurisdictional amount of $75,000 has been met. Defendants fail to address either facial defect, but rely on ancillary jurisdiction. However, that reliance is misplaced. It is well established that federal courts have limited jurisdiction, "possessing only that power authorized by the Constitution and statute." *Hudson v. Coleman*, 347 F.3d 138, 139 (6th Cir. 2003). Plaintiff's Complaint does not allege a cause of action under the Constitution or a federal statute. Thus,

there is no federal claim asserted with which the state claims are so intertwined that ancillary jurisdiction over those state claims would be required. *See Hudson*, 347 F.3d at 141-42 (quoting *Peacock v. Thomas*, 516 U.S. 349 (1996))("The basis of the doctrine of ancillary jurisdiction is the practical need to protect legal rights or effectively to resolve an entire, logically entwined lawsuit."). We find, therefore, that the entire case should be dismissed for lack of subject matter jurisdiction.

## PLAINTIFFS' MOTION TO CONVERT DEFENDANTS' MOTIONS TO DISMISS TO A MOTION FOR SUMMARY JUDGMENT

Defendants attached a copy of the Asset Purchase Agreement to their Motions. Plaintiffs assert that the document constitutes "matters outside the pleading," requiring the Court to convert the pending Motions to Dismiss to a Motion for Summary Judgment and permitting Plaintiffs an opportunity to produce evidentiary materials in opposition. (*See* Rule 12(d), FRCP). Case law has established that "documents that a defendant attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1555 (6th Cir. 1997); *see also Enervations, Inc. v. 3M*, 380 F.3d 1066, 1069 (8th Cir. 2004). Plaintiffs seem to say that only the Settlement Agreement is "necessarily embraced by the pleading." Defendants argue that both the Settlement Agreement and the Asset Purchase Agreement are "embraced by the pleading" and should have been attached to Plaintiffs' Complaint. The Court finds that both disputed documents are "embraced by the pleading" and are central to Plaintiff's claim. Therefore considering such documents does not require the Court to make the conversion to a Motion for Summary Judgment.

## CONCLUSION

Although we have chosen to rule on all the Motions presented by the parties, the jurisdictional motion (Doc.9) is dispositive, regardless of our ruling on Plaintiff's Motion to Convert Motion to Dismiss for Failure to State a Claim into Motion for Summary Judgment

4

(Doc. 14). Since Plaintiffs have presented no claims wherein federal jurisdiction could be asserted, the case SHOULD BE DISMISSED for lack of subject matter jurisdiction, leaving Plaintiffs free to assert their claims in a state court.

September 14, 2009

Timothy S. Hogan
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) in the event this Report is served by mail, and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation are based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

J:\HOGANTS\krehnbrink.wpd

5

1:08cv541 (Doc. 23)

**SENDER: COMPLETE THIS SECTION**
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**
A. Signature
X ☒ Agent ☐ Addressee
B. Received by ( Printed Name )   C. Date of Delivery
D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

1. Article Addressed to:

Robert Claus
3681 Blue Sky Park Road
Williamsburg, OH 45176

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.
4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label)
7002 3150 0000 8388 4254

PS Form 3811, August 2001    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**
A. Signature
X ☒ Agent ☐ Addressee
B. Received by ( Printed Name )   C. Date of Delivery
D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

1. Article Addressed to:

Robert Krehnbrink
9705 Shawnee Run Road
Cinti, OH 45243

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.
4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label)
7002 3150 0000 8388 4247

PS Form 3811, August 2001    Domestic Return Receipt    102595-02-M-1540